UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

PEGGY MORRIS,

        Plaintiff,

  - versus -

THE CITY OF NEW YORK, et al.,

        Defendants.

MEMORANDUM
AND ORDER

14-cv-1749 (JG) (LB)

A P P E A R A N C E S:

  PEGGY MORRIS
    188-16 Linden Blvd., Ste. 114
    St. Albans, NY 11412
    *Plaintiff pro se*

  ZACHARY W. CARTER
    Corporation Counsel of the City of New York
    100 Church Street
    New York, NY 10007
  By: Rosemari Y. Nam
    *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

  Peggy Morris brought this action against the City of New York (the "City"), several New York Police Department officers (the "NYPD Defendants"), judicial defendants, and private defendants under 42 U.S.C. §§ 1982, 1983, 1985, and 1988, as well as various sections of the United States Code and additional state law claims. On May 1, 2014, I dismissed Morris's § 1982 and § 1985 claims. I also dismissed the § 1983 claims against the private and judicial defendants, and allowed the § 1983 claims against the City and the NYPD Defendants[1] to proceed. Order (ECF No. 4) at 8-10. Morris moved for reconsideration of my decision

---

[1] The police officers named in the complaint are defendants Marcantonio, Skobla, Villanueva, McCormick, Martinez, Bradley, Marmara, and Banks.

dismissing the private defendants. On August 8, 2014, I granted that motion in part and reinstated the claims against Serena A. May, McCrary's Justice Center, Dawnett Simpson-Clark,[2] the Law Offices of Salami Oyakhilome, P.C., and Sadatu Salami-Oyakilome. Order (ECF No. 16) at 1-2.

On October 10, 2014, the City moved to dismiss Morris's remaining § 1983 claims. I heard oral argument on April 13, 2015, at which Morris appeared by telephone. For the reasons discussed below, Morris's false arrest claims against arresting officers Marcantonio, Skobla, and Villanueva may proceed. All other claims against the City and the NYPD Defendants are dismissed.

BACKGROUND

For the purposes of the memorandum, I assume a familiarity with the facts as outlined in my decision dated May 1, 2014. The facts underlying Morris's claims stem from a series of interactions with the NYPD Defendants that culminated in Morris's arrest on August 22, 2013. What follows is a brief summary of the claims that are the subject of this motion to dismiss.

Morris alleges that the NYPD Defendants violated her constitutional rights by failing to intervene in several disputes arising from an "illegal eviction" campaign against Morris (see Compl. ¶¶ 48-59) and by arresting her on August 22, 2013, in violation of her Fourth Amendment rights. *See id*. ¶¶ 60-80. She also claims the NYPD Defendants violated her rights to free speech and due process under the First and Fourteenth Amendments. *Id*. ¶¶ 90, 94. Morris alleges the NYPD officers "engaged in a joint venture and formed agreement to violate [Morris's] rights" and "assisted each other and the civilian protagonists in performing the various

---

[2] Morris refers to Clark as "Simpson-Clark" and "Clark." The criminal complaint referenced by the City refers to her as "Simpson-Clarke." *See* Nam Decl. (ECF No. 39) Ex. B.

described conduct lending their physical presence and support and the authority of their office to each other during the said events in order to accomplish a false arrest in furtherance of unlawful ends." *Id*. ¶ 83. As for the City, Morris claims that it failed to train and supervise the NYPD Defendants (*id*. ¶¶ 99-103) and created a policy or custom under which the unconstitutional practices occurred. *Id*. ¶ 105.

## DISCUSSION

A. *Standard of Review*

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys. This means I am required to read Morris's *pro se* complaint and opposition liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotations omitted). This is especially true where the *pro se* plaintiff asserts civil rights violations. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

In deciding a motion to dismiss, "I must assume the truth of all well-pleaded factual allegations, draw all inferences in the light most favorable to the plaintiff[], and grant the motion only if the complaint so viewed fails 'to raise a right to relief above the speculative level.'" *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must be supported by more than "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . .

." *Thomas v. City of New York*, No. 12-cv-6327 (JG), 2014 WL 1312006, at *2 (E.D.N.Y. Mar. 31, 2014) (quoting *Samuels v. Air Transp. Local* 504, 992 F.2d 12, 15 (2d Cir. 1993)).

B.     *The Section 1983 Claims*

Section 1983 imposes civil liability on anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983. It "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005). "[T]he core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. New York City Health and Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).

In addition to arguing that Morris fails to state claims under § 1983 for constitutional violations, the police officer defendants assert the defense of qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

1.     *The False Arrest and Threatened Arrest Claims*

The Fourth Amendment's prohibition of unreasonable search and seizure requires that any arrest made without a warrant be based on probable cause to believe that some offense is being (or has been) committed by the arrested person. *See, e.g.*, *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (citing cases). A warrantless arrest in the absence of probable

4

cause violates the Fourth Amendment.  "[A] plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (internal quotations omitted). If probable cause existed, the arrest is considered privileged and the officer has a "complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal quotations and citation omitted); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118-19 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Additionally, "[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

"Probable cause exists if police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Cole*, 26 F. App'x 45, 46-47 (2d Cir. 2001) (internal quotations omitted). Generally, if an arresting officer is made aware of a criminal charge by the victim, there is probable cause. *See Singer*, 63 F.3d at 119; *see also Miloslavsky v. AES Engineering Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth."), *aff'd* 993 F.2d 1534 (2d Cir. 1993).

As mentioned above, the arresting officers claim they are entitled to qualified immunity. On a false arrest claim, qualified immunity protects an arresting officer if he or she

can establish that there was "arguable probable cause" to arrest. *See Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) ("[T]he court must grant police officers qualified immunity when the court concludes that the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality of the seizure."). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Morris v. City of New York,* No. 12-cv-3959 (JG), 2013 WL 5781672, at *5 (E.D.N.Y. Oct. 28, 2013), *aff'd sub nom. Morris v. Silvestre*, No. 14-1188, 2015 WL 1061124 (2d Cir. Mar. 12, 2015) (hereinafter *Silvestre*) (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

The defendants argue that Morris's arrest was based on probable cause arising from an allegation in a criminal complaint that "Peggy Morris threw a small television down the stairs from the third floor to the second floor landing, almost hitting the complainants [Dawnett Simpson-Clarke and Tanyalee Murray] and [Clarke's] ten year old son." *See* Nam Decl. (ECF No. 39), Ex. B (Criminal Compl.); Def. Br. 10-11. I can consider the criminal complaint because it is referred to specifically in Morris's complaint, and it is a public record. *See* Compl. ¶ 64; *see also Liang v. City of New York*, No. 10-cv-3089 (ENV) (VVP), 2013 WL 5366394, at *4-5 (E.D.N.Y. Sept. 24, 2013) ("[O]n a motion to dismiss, a court may only consider [1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken.") (internal quotations omitted).

A criminal complaint is generally sufficient to support a finding of probable cause unless there are "circumstances that raise doubts as to the victim's veracity." *Singer*, 63 F.3d at

119. Indeed, there are times when an accuser's veracity should be doubted, such as when there is a preexisting relationship between the victim and the accused. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998); *see generally* 2 Wayne A. LaFave, *Search and Seizure* § 3.4(a) (5th ed. 2012). Morris argues that this is one of those cases. She alleges the arresting officers did not believe Clark's allegations and knew of her previous contentious relationship with Clark. Compl. ¶¶ 64, 85. Morris claims that the nature of her relationship with Clark was something "all the responding officers and Sergeant McCormick knew about," and that Clark had an "axe to grind." Pl. Opp. at 11.[3]

In a previous case where Morris claimed false arrest based on the police officers' knowledge of an antagonistic relationship between Morris and the complainant, I found that officers of reasonable competence could disagree about whether there was probable cause and dismissed Morris's complaint on the grounds of qualified immunity. *See Silvestre*, 2013 WL, at *5-7. In *Silvestre*, Morris was arrested when the son of Osborne Miller, Morris's terminally ill domestic partner, made a criminal complaint that Morris had unlawful possession of Miller's bank card and was making unauthorized withdrawals. *Id.* at *1. In affirming the decision that the officers had arguable probable cause to arrest Morris, the Second Circuit noted that Morris's prosecution was supported by her admission — after an earlier denial — that she would appear on an ATM surveillance video using Morris's bank card. *Silvestre*, 2015 WL, at *2.

Like *Silvestre*, the present case involves an arrest supported by little more than a "complaint by an individual whose preexisting, antagonistic relationship with Morris was known to the police." *Id.* But in this case, assuming, as I must, the truth of Morris's allegations on a

---

[3] Morris also takes issue with the fact that the reasons for arrest were not made clear at the time of arrest, but that is not a requirement for establishing probable cause for an arrest. Probable cause analysis is not limited to the specific charges contemplated or presented by the arresting officer—facts and circumstances known to the officers at time of arrest may be retroactively analyzed and if there was probable cause to arrest for any charge, then no false arrest claim lies. *See Devenpeck v. Alford*, 543 U.S. 146, 152-55 (2004).

motion to dismiss, I cannot conclude that reasonable officers could disagree on the question of probable cause. Unlike *Silvestre*, where the arrest was supported by Morris's admission about the ATM footage, in this case there are no independent facts that corroborate Clark's allegation. Instead, Morris alleges that the officers had "knowledge of [Clark's] established pattern of making and filing unbelievable and false complaints against [Morris]." Compl. ¶ 85. Morris also alleges that the officers knew of her previous complaints against Clark. She describes previous interactions with the officers in the precinct where she made complaints regarding conduct by Clark and they characterized the complaints as "Bull S__t." Compl. ¶ 51. Morris also argues that "Clark and others" first made this television throwing allegation against her on August 6 by (Pl. Opp. at 5) and that officer Pena from the 113th Precinct heard the allegation on August 20 and told Morris that he did not believe she threw the television. Compl. ¶ 64.

In sum, Morris has sufficiently alleged that she was arrested without probable cause. Moreover, I conclude that she has alleged facts that "indicate that any reasonably competent officer should have known that [Clark] was an unreliable victim-informant whose statement, under the circumstances, could not form the sole basis for an arrest." *McGee v. Doe*, 568 F. App'x 32, 37-38 (2d Cir. 2014), *as amended* (July 2, 2014). As in *McGee*, Morris's complaint alleges that some of the police defendants had longstanding relationships with both Morris and Clark and knew of their ongoing dispute. She has further alleged facts that support an inference that the real reason she was arrested was because the officers were annoyed by her numerous complaints about others. The qualified immunity defense fails at this juncture because if those alleged facts and the reasonable inferences that could be drawn from them are true, then no reasonable law enforcement officer would believe it was permissible to arrest Morris. It may well be necessary to revisit this issue on a motion for summary judgment, when the facts are

8

more fully developed. However, at this stage, for the reasons discussed above, the motion to dismiss the false arrest claims against Marcantonio, Skobla, and Villanueva is denied.

Finally, Morris alleges that Defendant Martinez threatened to arrest her repeatedly and that on August 21, 2013, the day before her arrest, he informed Emergency Medical Service responders that she was a "mentally disturbed individual" before following her down the street as she tried to walk away. Compl. ¶¶ 64-65. However, the mere threat of arrest does not constitute a Fourth Amendment violation. *Bodek v. Bunis*, No. 06-cv-6022L (DL), 2007 WL 1526423, at *9 (W.D.N.Y. May 23, 2007). Therefore, Morris's Fourth Amendment claim against Martinez is dismissed.

2. *The Failure to Intervene Claims*

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know that other officers have committed a constitutional violation, including the use of excessive force or unjustifiable arrest. *See id*. For liability to attach, "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id. See also Armstead v. New York City Police Dep't,* No. 13-cv-891 (ENV) (JMA), 2013 WL 1148803, at *3 (E.D.N.Y. Mar. 19, 2013).

Morris claims that Officers Banks, Bradley, Marmara, and McCormick, who did not arrest her — but also did not intervene to stop her arrest — broke the law. She asserts that they had dismissed previous claims made by Morris as "Bull S__t complaints" and that her efforts to get protection against those making threatening calls to her were "all in vain," for

9

instance. Compl. ¶¶ 51-52. However, police officers have no affirmative duty to investigate complaints, as the government and its agents are under no general duty to provide public services or protection to individual citizens. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). In addition, filing a complaint with an officer has not been found to be enough to give rise to a special relationship in which the officer has a duty to protect the complainant. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 534 (2d Cir. 1993).

Morris also asserts that the officers at the station on August 22, 2013 had knowledge that her arrest was unjustified and failed to intervene. Pl. Opp. 13. However, Morris cannot establish a claim for failure to intervene, as she cannot overcome to hurdle of qualified immunity. A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to "violate a suspect's clearly established statutory or constitutional rights" and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotations omitted). When Morris was brought into the 113th precinct, I cannot say it would have been objectively unreasonable for an observing police officer to believe she had been properly arrested. Therefore, qualified immunity applies to the non-arresting officers.

3. *Municipality Liability*

Morris argues that the City should be held liable for failure to properly train and supervise the NYPD Defendants, and for creating a policy or custom that allows what Morris considers to be false arrests to occur regularly. In a previous action brought by Morris I addressed a very similar claim against the City. *See Morris v. Katz*, No. 11-CV-3556 (JG), 2011 WL 3918965 (E.D.N.Y. Sept. 4, 2011) ("In order to sustain a claim for relief under 42

U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right."). As in that case, there are no facts here from which a reasonable jury could find that any of the wrongful acts in which individual officers allegedly engaged were the result of a municipal policy or custom. I therefore grant the motion to dismiss Morris's § 1983 claim against the City.

4. *The First Amendment Claims*

Morris alleges that her First Amendment rights were violated when unidentified "police personnel" and unspecified court officials "silenced" her when she advocated for property rights and spoke out about due process and the court's lack of jurisdiction and that this "resulted in a chilling effect on [her] willingness to speak up as a citizen." Comp. ¶¶ 129-31. To make out a claim for violations of her First Amendment rights, Morris must show: "1) [she] has a right protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and 3) defendants' actions effectively chilled the exercise of [her] First Amendment right." *See Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Morris's statement that she experienced a "chilling effect on her willingness to speak up" is not a sufficient injury to establish a First Amendment violation. Morris's First Amendment claim fails because she is required to show "that the defendant's actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (citation omitted). To experience a chilling effect, Morris would have to feel as if she could not speak up because of some specific action taken against her in order to silence her.

Morris has alleged no facts to establish that the officers' actions had a real effect on her. To the contrary, Morris alleges that she "is a life-long community advocate" and a housing specialist (Compl. ¶ 33), and she shows no intention of ceasing her efforts to prevent unlawful foreclosures and evictions.

## CONCLUSION

For the reasons discussed above, the motion to dismiss the false arrest claims against arresting officers Marcantonio, Skobla, and Villanueva is denied. The defendants' motion is granted in all other respects. I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-445 (1962).

So ordered.

John Gleeson, U.S.D.J.

Dated: April 27, 2015
      Brooklyn, New York